**In re PICKLE LOGGING, INC., Debtor.**

**Deere Credit, Inc., Movant,**

v.

**Pickle Logging, Inc., Respondent.**

**No. 02–10824.**

United States Bankruptcy Court, M.D. Georgia, Albany Division.

Nov. 18, 2002.

Richard A. Childs, Columbus, GA, for debtor.

Edgar W. Duskin, Jr., Albany, GA, Barbara K. Hamilton, Becket & Lee LLP, Malvern, PA, John H. Irby, Wilson, Brock & Irby, LLC, Atlanta, GA, Raymond E. Kenny, Becket and Lee LLP, Malvern, PA, Ronald A. Levine, Atlanta, GA, Howard S. McKelvey, Jr., Crisp, Oxford, et al., Americus, GA, Cater C. Thompson, Jones, Cork & Miller, Macon, GA, Karen Fagin White, Atlanta, GA, for creditor.

## MEMORANDUM OPINION

JOHN T. LANEY, III, Bankruptcy Judge.

On October 10, 2002, the court held a hearing on the Motion of Deere Credit, Inc. to Reconsider Order on Motion for Adequate Protection and to Reconsider Order on Motion to Determine Secured Status, both orders dated September 3, 2002. At the conclusion of the hearing, the court took the matter under advisement. After considering the evidence presented at the hearing on August 16, 2002 and the continued hearing on August 21, 2002 hearing, the parties' briefs and oral arguments, as well as applicable statutory and case law, the court makes the following findings of fact and conclusions of law.

## FACTS

Pickle Logging, Inc. ("Debtor") is an Americus, Georgia based company doing business in the tree logging industry. In an effort to cure an arrearage to Deere Credit, Inc. ("Movant"), Debtor refinanced eight pieces of equipment. The refinancing was done with Movant.

On April 18, 2002, Debtor filed for Chapter 11 bankruptcy protection. Prior to the bankruptcy filing, in addition to the refinancing mentioned above, Debtor had put the same eight pieces of equipment, as well as other assets, up as collateral in transactions with other creditors. Because there were multiple security interests in the eight pieces of equipment, Debtor filed motions to determine the secured status of a number of different creditors. After consent orders resolved much of the conflict between secured creditors as to priority and extent of security interests, the final issue remained as to the value of the eight pieces of equipment. The values assigned to each piece of equipment would determine the amount due to the secured creditors for adequate protection.

At a hearing held on August 16, 2002 and the continued hearing on August 21, 2002 to determine the value of the eight pieces of equipment, the present issue was raised: whether Movant had a perfected security interest in one specific piece of

equipment, a 548G skidder serial number DW548GX568154 ("548 G skidder"), which had been mislabeled in both the financing statement and the security agreement as a 648G skidder, serial number DW648GX568154. After hearing testimony from expert witnesses that a 548G skidder is substantially different in appearance, performance, and price from a 648G skidder, the court held that Movant did not have a perfected security interest in the 548G skidder because of the mislabeling. Therefore, Movant was an unsecured creditor as to the 548G skidder. The court did not assign a value to the 548G skidder for adequate protection payments. Movant has asked the court to reconsider its September 3, 2002 orders regarding adequate protection payments and the secured status of Movant as to the 548G skidder.

Movant contends that the mislabeling is not seriously misleading because it is off by only one digit. Movant urges that a person of ordinary business prudence would be put on notice to inquire further about the 548G skidder despite the mislabeling. Therefore, Movant has a perfected security interest in the 548G skidder and would not be subordinate to Debtor.

Debtor argues first that the 548G skidder owned by Debtor is not listed in the security agreement or the financing statement, therefore Movant does not have a security interest in the 548G skidder. Furthermore, Debtor argues that a person of ordinary business prudence would know that a 548G skidder differs substantially from a 648G skidder. Debtor contends that the mislabeling is seriously misleading because of the difference in the two models. Debtor argues that there is nothing patently erroneous about the serial number listed on the security agreement or the financing statement to put a person of ordinary business prudence on notice to inquire further. Finally, Debtor contends

that, in order for a secured party to have a security interest in a piece of collateral, the security agreement must include a valid description of the collateral. Under contract law, Movant might have the right to reform the contract. However, because of the Chapter 11 bankruptcy proceeding, this remedy is not available to Movant. Even with reformation, Debtor, with the status of a lien creditor, would have higher priority than Movant would receive with a reformed security agreement.

## CONCLUSIONS OF LAW

Under the Bankruptcy Code ("Code"), a debtor-in-possession has the same rights and powers as a trustee. *See* 11 U.S.C. § 1107. Additionally, under the "strong arm" provision of 11 U.S.C. § 544(a)(1), a debtor-in-possession acquires the status of a hypothetical lien creditor, deemed to be perfected as of the filing date of the bankruptcy petition. 11 U.S.C. § 544(a)(1); *see also First American Bank & Trust Company of Athens, Georgia v. Harris (In re Stewart)*, 74 B.R. 350, 353–354 (Bankr. M.D.Ga.1987).

Under Georgia law, the definition of a lien creditor includes a trustee in bankruptcy. *See* O.C.G.A. § 11–9–102(a)(53)(C). Since a debtor-in-possession acquires the same rights and powers as a trustee, a debtor-in-possession has the status of a lien creditor under Georgia law as well. *See generally, WWG Industries, Inc. v. United Textiles, Inc. (In re WWG Industries, Inc.)*, 772 F.2d 810, 811–812 (11th Cir.1985). Further, under Georgia law, a party with an unperfected security interest is subordinate to a lien creditor. *See* O.C.G.A. § 11–9–317(a)(2)(B). The question is whether Movant's security interest in the 548G skidder is perfected despite the mislabeling on the security agreement and the financing statement.

■ Pursuant to O.C.G.A. § 11–9–203(b)(3)(A), a security interest in collateral is not enforceable against the debtor or third parties unless the debtor has signed, executed, or otherwise adopted a security agreement that contains a description of the collateral. O.C.G.A. § 11–9–203(b)(3)(A); *see also* O.C.G.A. § 11–9–102(a)(7). The description of the collateral in the security agreement and the financing statement, if required, must comport with O.C.G.A. § 11–9–108(a). O.C.G.A. § 11–9–108(a); *see also* O.C.G.A. § 11–9–504(1). The description of collateral is sufficient if it reasonably identifies what is described. *See* O.C.G.A. § 11–9–108(a). "The question of the sufficiency of [a] description of [collateral] in a [recorded document] is one of law...." *Bank of Cumming v. Chapman*, 245 Ga. 261, 264 S.E.2d 201 (1980), quoting *First National Bank of Fitzgerald v. Spicer*, 10 Ga.App. 503(1), 73 S.E. 753 (1912).

■ Any number of things could be used to describe collateral and satisfy O.C.G.A. § 11–9–108(a). A physical description of the collateral, including or excluding a serial number, could be used so long as it "reasonably identifies what is described." O.C.G.A. § 11–9–108(a). The description merely needs to raise a red flag to a third party indicating that more investigation may be necessary to determine whether or not an item is subject to a security agreement. *See Abney v. I.T.T. Diversified Credit Corporation (In re Environmental Electronic Systems, Inc.)*, 11 B.R. 965, 967 (Bankr.N.D.Ga.1981). A party does not lose its secured status just because the description includes an inaccurate serial number. *See Yancey Brothers Company v. Dehco, Inc.*, 108 Ga.App. 875, 877, 134 S.E.2d 828, 830 (1964). However, if the serial number is inaccurate, there must be additional information that provides a "key" to the collateral's identity. *Id.*

■ Here, the description in the security agreement and the financing statement are identical. (*See* Movant's Ex. 1). Both documents list a 648G skidder with the serial number DW648GX568154. (*See id.*). There is nothing obviously wrong with the model number or the serial number. 648G is a model number for one type skidder sold by Movant. (*See id.*). The serial number listed for the disputed skidder is in accordance with other serial numbers issued by Movant. (*See id.*). The insurance value listed on the security agreement for the disputed skidder is only $10,000 less than the 648G skidder, serial number DW648GX564990 ("648G–4990 skidder"). (*See id.*). With the $35,000 difference in insurance values between the 648G–4990 skidder and the 648G skidder, serial number DW648GX573931 ("648G–3931 skidder"), a $10,000 difference in insurance values would not raise a red flag. (*See id.*).

According to testimony at the August 16, 2002 hearing, Debtor owned more than one of Movant's skidders, including at least two 548G skidders and at least two 648G skidders. There is nothing in either the financing statement or the security agreement that raises a red flag to a third party. A potential purchaser of the 548G skidder in dispute here could easily assume that the skidder is not covered by either the security agreement or the financing statement.

If just the model number was incorrect or if just the serial number was incorrect, the result may be different. It is apparent from the other items listed on the security agreement and the financing statement that the model number is reflected in the serial number. If the model number was not repeated in the serial number, then it would be apparent that something was

wrong with one of the two numbers. At a minimum it should raise a red flag to a person of ordinary business prudence that further investigation is necessary. However, with both of the numbers reflecting a 648G skidder, there is nothing to indicate that there was a mistake.

Therefore, the court's order dated September 3, 2002 will not be changed. The 548G skidder is misdescribed in both the security agreement and the financing statement. The rights of Debtor, as a hypothetical lien creditor, are superior to the rights of Movant.

An order in accordance with this Memorandum Opinion will be entered.